**Drucilla AUBREY, Plaintiff–Appellee,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant–Appellant.**

No. 88–6417.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 15, 1989.

Decided Sept. 20, 1989.

Rehearing Denied Oct. 30, 1989.

John T. Aubrey (argued), Aubrey & Bowling, Manchester, Ky., for Drucilla Aubrey, plaintiff-appellee.

Mark C. Shuford (argued) and Winfrey P. Blackburn, Stites & Harbison, Louisville, Ky., for Aetna Life Ins. Co., defendant-appellant.

Before JONES and MILBURN, Circuit Judges, and BELL, District Judge.[*]

MILBURN, Circuit Judge.

Defendant-appellant Aetna Life Insurance Company ("Aetna") appeals from a summary judgment for plaintiff-appellee Drucilla Aubrey in this action challenging a denial of benefits under an employee benefit plan. For the reasons that follow, we affirm.

## I.

### A.

Aubrey filed an action in the Circuit Court of Clay County, Kentucky, on April 11, 1987, seeking a declaration that she was entitled to certain insurance benefits. The insurance policy in question is a Comprehensive Medical and Dental Insurance Plan ("the Plan") issued and administered by Aetna for the employees of the Modern Woodmen of America ("MWA"), with whom Aubrey is employed as a field representative. The benefits claimed were for medical expenses relating to Aubrey's pregnancy, which commenced approximately two months prior to the effective date of the coverage. Aetna denied coverage for all costs incurred as a result of the pregnancy under the "Pre–Existing Condition" clause contained in the Plan. Aubrey asserted, based upon the particular wording contained in a separate "Pregnancy Coverage" clause, that her expenses incurred after the effective date of coverage were covered and should have been paid.

Claiming that the insurance policy covering Aubrey was an employee benefit plan governed by the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., Aetna filed a petition for removal on May 13, 1988. Aubrey responded and urged that the action be remanded to state court. However, on July 25, 1988, the district court granted Aetna's petition for removal.

As the parties were in agreement that there were no contested issues of fact, they filed cross-motions for summary judgment. On November 21, 1988, the district court denied Aetna's motion for summary judgment and granted Aubrey's motion. Aetna filed a timely notice of appeal on December 20, 1988.

### B.

Aubrey, an employee of MWA, became qualified for coverage under the terms and provisions of an employee benefits plan drafted and issued by Aetna on August 1, 1987. Sometime near the end of June 1987, Aubrey learned that she was pregnant. During the next several weeks, she sought and received medical treatment relating to her pregnancy from Dr. Gordon Betts and the Clinical Laboratories of Southern Kentucky.

The plan under which Aubrey became covered on August 1, 1987, contained two pertinent provisions relating to claims for pregnancy benefits. On page three of the plan, there is contained the following provision:

### PREGNANCY COVERAGE

*Medical Expense Benefits are payable for pregnancy-related expenses of female employees and dependents on the same basis as for disease, whether or not the pregnancy commences while the*

---

[*] Honorable Sam H. Bell, United States District Judge for the Northern District of Ohio, sitting by designation.

*individual is covered under this Plan.* The expenses must be incurred while the individual is covered under this Plan. If expenses are incurred after the coverage ceases, she may be eligible for benefits during the disability for up to 90 days if satisfactory evidence is furnished to Aetna that the individual has been totally disabled since her coverage terminated. (Emphasis supplied)

Page 13 of the Plan contained the following provision:

### Pre-existing Conditions

No payment for charges incurred in connection with an illness commencing prior to the insured individual's effective date of coverage will be made until

1. after a continuous period of three months after the effective date of coverage during which the person has received no treatment with respect to the illness, or

2. after a period of twenty-four consecutive months during which the person is continuously insured hereunder.

*A "pre-existing condition" means an injury or disease* for which the individual received treatment or services or took prescribed drugs or medicines during the three months before he last became covered. (Emphasis supplied)

On August 28, 1987, Aubrey filed for pregnancy-related benefits. She admits that she received treatment for the pregnancy during the month prior to the effective date of coverage. On August 31, 1987, the personnel department of MWA responded to Aubrey's claim by advising her that her pregnancy-related expenses were not covered because her pregnancy constituted a pre-existing condition as defined by the Plan.

On September 8, 1987, Aubrey wrote MWA, stating that she was of the view that the pregnancy coverage clause provided for coverage. On September 15, 1987, MWA's personnel department again wrote Aubrey and stated that the pregnancy coverage and pre-existing conditions clause operated in the following manner:

[p]regnancy coverage is treated the same as for any other disease. Had the pregnancy commenced prior to your effective date of coverage, and no treatment had been received, normal benefits would be paid. However, because you were treated prior to the effective date of coverage, and have not gone three months free of treatment, your pregnancy (as would any other disease) will be considered a pre-existing condition.

On February 9, 1988, Aubrey gave birth to her child. On March 3, 1988, she again presented her pregnancy-related bills to Aetna for payment. Once again they were denied under the pre-existing condition clause. Thereafter, on April 11, 1988, she filed this action.

In granting summary judgment in favor of Aubrey, the district court held that Aetna's interpretation of the pre-existing conditions portion of the Plan rendered the pregnancy coverage provision superfluous and that Aetna's interpretation would have the effect of forbidding a pregnant insured from seeing a physician for three months in order to obtain benefits, which he concluded was contrary to the public goals of ERISA and medical reality.

The sole issue on appeal is whether the district court erred in concluding that Aubrey was entitled to benefits under the Plan.

## II.

### A.

■ Since this action arises under ERISA, its disposition is governed by federal law. As noted in *Cook v. Pension Plan for Salaried Employees*, 801 F.2d 865, 869–70 (6th Cir.1986), this court had previously adopted the arbitrary or capricious standard of review when reviewing decisions by employee benefit plan administrators to deny benefits. This was the standard of review employed by the district court in the present action.

However, in *Firestone Tire & Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989), the Supreme Court rejected the arbitrary and capricious

standard of review and held instead that the appropriate standard of review is guided by principles of trust law. In *Firestone,* the company had argued "that as a matter of trust law the interpretation of the terms of a plan is an inherently discretionary function" that requires a deferential standard of review. *Id.* 109 S.Ct. at 955. However, the Supreme Court rejected that argument, holding that

> [s]ettled principles of trust law, which point to *de novo* review of benefit eligibility determinations based on plan interpretations, belie this contention. As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation. "The extent of the duties and powers of a trustee is determined by the rules of law that are applicable to the situation, and not the rules that the trustee or his attorney believes to be applicable, and by the terms of the trust *as the court may interpret them,* and not as they may be interpreted by the trustee himself or by his attorney." A trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instructions from the court. The terms of trusts created by written instruments are "determined by *the provisions of the instrument as inter-* preted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible."

*Id.* (emphasis in original and citations omitted). Thus, our review is not whether the district court was correct in concluding that Aetna's interpretation of the policy language was arbitrary and capricious, but, under a *de novo* review, which interpretation is more likely to carry out the intent of the parties.

### B.

Aetna contends that the "pregnancy coverage" provision exists solely to establish that Aetna is complying with the Pregnancy Discrimination Act of 1978 ("PDA"), which amended Title VII of the Civil Rights Act of 1964 to provide that an employer which maintains any policies that adversely impact on or disparately treat pregnant employees violates Title VII unless an appropriate affirmative defense can be established. In its holding in *Newport News Shipbuilding and Dry Dock v. EEOC,* 462 U.S. 669, 682–84, 103 S.Ct. 2622, 2630–31, 77 L.Ed.2d 89 (1983), the Supreme Court held that the amendment to Title VII prohibits discrimination in compensation terms, conditions or privileges of employment because of sex, and that includes health insurance provided to employees and their spouses. Aetna contends that it inserted the pregnancy coverage clause to establish that it was in compliance with Title VII by treating pregnancy the same as disease or illness.

On the other hand, Aubrey contends the district court was correct in that Aetna's interpretation flies in the face of the plain and dispositive language of the Plan which indicates that pregnancy expenses are claimable "whether or not the pregnancy commences while the individual was covered under this plan." Aubrey further contends that the pregnancy clause is not only a statement that pregnancy expenses will be treated as other expenses under the plan, but also provides an exception to the Pre–Existing Condition clause for pregnancy-related expenses. She argues that if Aetna wished to establish that the Plan was in compliance with the PDA, it simply needed to state in the policy that pregnancy would be treated the same as disease or illness and that there is no reason for the additional language unless the parties wish to create an exception to the pre-existing condition exclusion.

Aetna urges this court to reject the interpretation offered by Aubrey that was ultimately adopted by the district court because Aetna alleges that it is unlawful under Title VII. Aetna contends that the PDA and the Supreme Court's holding in *Newport News* require that pregnancy be treated the same as disease or illness and that an employer may not treat pregnancy more beneficially than it does disease or illness.

We reject Aetna's interpretation of Title VII and the PDA. The PDA prohibits discrimination; it does not prevent an employer from treating pregnant employees more beneficially than it treats other employees. As the Supreme Court has indicated, "Congress intended the PDA to be a floor beneath which pregnancy disability benefits may not drop—not a ceiling above which they may not rise." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 692, 93 L.Ed.2d 613 (1987) (citation omitted); *see also Harness v. Hartz Mountain Corp.*, 877 F.2d 1307 (6th Cir.1989).

Aetna additionally argues that the interpretation adopted by the district court is not the most reasonable interpretation of the Pregnancy Coverage provision. Aetna contends that the second clause of the first sentence of the provision upon which Aubrey relies is limited by the first clause of the sentence which provides that pregnancy-related expenses will be treated the same as disease-related expenses. In other words, Aetna argues that the clause provides that pregnancy-related expenses are claimable, but on the same basis as disease. If a claim for disease or pregnancy is made, but the individual received treatment for the disease during the three months prior to becoming covered under the Plan, Aetna argues that the claim must be denied. However, if the disease or pregnancy developed prior to the effective date of coverage and the individual was unaware of his or her condition, or failed to receive treatment for some reason, then benefits would be payable once the individual became covered by the Plan. Thus, Aetna construes the language to the effect that a woman whose pregnancy commenced sometime during the three months prior to the effective date of coverage, but who was not diagnosed and/or received medical treatment until after becoming covered, would still be entitled to full pregnancy benefits despite the fact that her pregnancy technically pre-existed her coverage.

We agree with the district court that Aetna's interpretation fails to give full effect to all of the language in question. If Aetna simply wished to have pregnancy treated the same as disease or illness, it simply had to state this in the Plan. Moreover, the Pre–Existing Conditions portion of the Plan makes no mention of pregnancy. In fact, a pre-existing condition is defined as an "injury or disease," and there is no other language in that provision of the Plan suggesting it applies to pregnancy.

As we read the Plan in its entirety, as we must in reviewing this action under ERISA, the most reasonable interpretation is that adopted by the district court. Under the standard of review announced by the Supreme Court in *Firestone Tire*, it is reasonable for plan administrators to want to urge women to seek prompt prenatal care instead of encouraging them to forego prenatal care for three months in order to obtain insurance coverage. Indeed, good prenatal care undoubtedly results in healthier mothers and children, and a corresponding lower long-term cost to the Plan.

### III.

Accordingly, for the reasons stated, the summary judgment of the district court is AFFIRMED.