**Sharon S. GAUNT, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Defendant.**

**No. S90–49.**

United States District Court, N.D. Indiana, South Bend Division.

Jan. 28, 1991.

---

**1314**

Joseph V. Simeri, South Bend, Ind., C. Richard Grieser, Columbus, Ohio, for plaintiff.

David H. McCain, LaPorte, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the defendant's motion for summary judgment on the former Sharon Smith's two-count complaint that defendant CSX Transportation, Inc. ("CSX") violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), with respect to her late husband, H. Freeman Smith. CSX denied the plaintiff's claim for voluntary severance pay benefits as Mr. Smith's beneficiary. The plaintiff, now known as Sharon Gaunt, has exhausted all administrative remedies available to her and now seeks a resolution from this court. The court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). For the reasons that follow, the court concludes that the defendant has demonstrated its entitlement to summary judgment.

CSX maintains that it lawfully denied the plaintiff's request for benefits because Mr. Smith, who was not in active service when his application was considered, was not entitled to voluntary severance benefits. CSX contends that the decision to deny Mr. Smith's application for benefits was not rendered in either an arbitrary or capricious manner. CSX argues that the facts in this matter are not in dispute and the court should determine that its conduct did not violate ERISA as a matter of law.

### I.

The record before the court discloses no factual dispute; the parties dispute only the legal effect of undisputed facts. CSX operates an interstate railroad system which includes what was formerly The Chesapeake and Ohio Railway Company ("C & O Railway"). On or about September 1, 1987, C & O Railway merged with CSX, forming a new corporation. CSX currently operates railroad facilities which include tracks and other operations in Miami County, Indiana, Ms. Gaunt's county of residence.

H. Freeman Smith was an engine service employee (a railroad engineer) for CSX for several years up until his death on July 7, 1988. In June, 1988, he held seniority status on the former C & O Cincinnati–Chicago Seniority District.

On March 25, 1986, C & O Railway adopted a Severance Plan for Certain Contract Employees. CSX adopted a similar voluntary severance plan on June 14, 1988, providing for cash payments to certain employees who voluntarily resigned their employment with CSX. The money to be paid to employees who voluntarily resigned would either be paid in a $75,000.00 lump sum or in monthly installments.

The CSX severance plan included a discussion of the relevant terms used in that plan. The term "employee" was defined to include, "Any active employee of an Employer who works in a Class or Craft of Employees whose terms and conditions of employment are covered by a collective bargaining agreement between his Employer and a Union." A "surplus employee" was an employee who was a member of a "surplus group", which was defined as, "A group of two or more Employees employed at a designated location or as part of a functional unit of an Employer's operations (as described by seniority district or otherwise) designated by such Employer in connection with a limited program of terminations under the Plan." A "participant" in the severance plan was defined as "an Employee whose timely election is accepted by the Committee and who becomes entitled to receive severance benefits ..."

After CSX determined the existence of a surplus group of employees, it offered surplus employees the right to elect to receive severance benefits if the employee: (1) was in active service with CSX; (2) worked in a class or craft of employees covered by a

collective bargaining agreement between CSX and a union; (3) was employed at a designated identifiable location or as part of a functional unit (as described by seniority districts or otherwise) for which CSX had designated a specific number of employees to be surplus; (4) filed his election within the period specified by CSX, subject to acceptance in order of seniority rank within the class or craft of employees up to the number of employees designated as surplus; and (5) had released all seniority rights and employment related claims arising out of his employment.

On June 16, 1988, CSX implemented an enabling plan for engine service employees on certain designated seniority districts, including the Cincinnati–Chicago Seniority District in which Mr. Smith worked. These engineering employees were considered part of a surplus group entitled to apply for voluntary severance benefits. Engineering employees within the surplus group were directed to file applications for severance benefits between June 16 and July 7, 1988. Information regarding the plan was furnished to engine service employees by posting on employee bulletin boards and distribution to various interested employees. The information distributed to engineering employees in the surplus group included the following statement:

> Unfortunately, we have more employees in engine service ... than we need to meet the demand we foresee for our transportation services in the years ahead, and we must therefore further downsize our employment in this important occupation as well. In order to implement in a timely fashion our planned reduction in engine service employees in various seniority districts, we are making available a *one-time offer of voluntary separation allowances in the amount of $75,000 to eligible employees in active service on June 16, 1988.* This program closes on July 7, 1988, and the Company does not intend to make further offers of voluntary separation at or above the $75,000 level. Indeed, it is not likely that it will be necessary to make further offers of voluntary separation at any level on the seniority districts identi-

fied in this notice in the foreseeable future.

The information further explained eligibility for the severance program in the following way:

> In order to participate in the program, you must be an employee in active engine service on June 16, 1988 in a seniority district listed [in the enabling plan]. Employees on leave of absence, on disability leave, or ineligible to return to active service are not eligible for this program....

> The number of separations to be granted under this program may be limited by the Company in accordance with the Plan. Employees whose requests are accepted will be notified after the close of the program, and their resignation will become effective on the date of acceptance by the Company....

> By accepting your election as provided in the Plan, the Company agrees to pay you a benefit and you agree to give up all your employment rights against the Company. You do this by resigning from employment and signing an agreement by which you relinquish your seniority rights and any other employment-related claims which you may have against the Company.

Mr. Smith filled out the forms necessary for his consideration in the voluntary severance program and filed them on July 7, 1988, electing the $75,000.00 lump sum payment. At the time of Mr. Smith's application, eight other surplus group employees with seniority in his district also applied for severance benefits. Mr. Smith had the least seniority among the pool of nine applicants.

A committee appointed by CSX administered the company's severance plan. Each committee member is considered a fiduciary in his administration of the plan. The plan entrusted the committee with the following duties:

> (a) to construe and interpret the Plan, to decide all questions of eligibility and to determine the amount, manner and

time of payment of any benefits provided under the Plan;

(b) to prescribe procedures to be followed by Participants in filing applications for benefits;

(c) to make a determinations to the right of any person to a benefit and to afford any person the right to a hearing regarding the determination;

(d) to demand of and to receive from an Employer and from Employees all information that is necessary for the proper administration of the Plan;

(e) to prepare and distribute, in the manner the Committee determines to be appropriate, any information explaining the Plan;

(f) to furnish Employers, upon request, any annual reports on the administration of the Plan as are reasonable and appropriate;

(g) to appoint or to employ an administrator for the Plan and to appoint or to employ any agents that the Committee deems advisable, including legal and actuarial counsel, and to delegate to any appointed or employed person any or all of the duties and responsibilities in connection with the Plan ...

The committee, however, had "no power to add to, subtract from or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirement or eligibility for a Pension under the Plan." The committee had the power to "adopt rules regulations and actuarial tables and may make such decisions as it deems necessary or desirable for the proper administration of the Plan." The committee was required to apply its rules and decisions in a uniform and consistent manner to all employees in similar circumstances.

CSX initially determined that it had a surplus of three employees in Mr. Smith's district. CSX, however, decided to keep applications beyond the surplus amount on file to be considered as the company was operationally able to further reduce employment on this seniority district. The applications from the eight employees senior to Mr. Smith ultimately were accepted.

All eight of those employees were in active train service when their respective applications and resignations were accepted. The application of the most senior employee was accepted on July 22, 1988; the eighth employee's application was accepted on December 12, 1988. Mr. Smith died on July 7, 1988.

The total number of applications that were ultimately accepted in each seniority district was not determined until several months after the deadline for submitting applications. A total of 580 CSX engine service employees submitted applications under this specific severance program. Of those applicants, 447 ultimately were accepted and those employees voluntarily resigned and received separation benefits. Seven employees withdrew their applications before CSX accepted them. CSX rejected 107 applications due to service requirements, meaning that CSX needed those employees in order to operate its trains. Nineteen applications, including Mr. Smith's, were not accepted, for the following reasons:

(1) four employees had been dismissed,

(2) six employees were off work either from illness or injury,

(3) three employees had transferred to a different seniority district,

(4) one employee was drawing a disability annuity,

(5) one employee was on a leave of absence,

(6) one employee was inactive,

(7) two employees had changed the conditions of their application, and

(8) one employee died.

Following her husband's death, Ms. Gaunt requested that CSX pay her voluntary severance payments on behalf of her deceased husband. CSX denied her request. She appealed the denial to the committee that administered the severance plan and that committee denied her appeal for the following stated reasons:

(a) Due to his death, he was not in active engine service at the time his application would have been considered;

(b) He was no longer an employee and, therefore was not able to provide the

consideration, that is, a voluntary resignation of employment, in exchange for which a voluntary severance is paid under the plan;

(c) The plan did not encompass an offer of a severance benefit which could be accepted by H. Freeman Smith; and

(d) Death benefits in general are not available under the plan.

Ms. Gaunt contends that the committee's determination was arbitrary and capricious and that its application of the plan with respect to her husband was discriminatory. CSX argues in response that the committee's denial of Mr. Smith's application for voluntary severance was reasonable and not rendered in an arbitrary, capricious, or discriminatory manner.

## II.

ERISA authorizes the bringing of civil actions in federal court "by a participant or beneficiary to recover benefits due to [her] under the terms of his plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A claimant must first exhaust those administrative remedies provided by a benefit plan before she may bring an ERISA action, *Evans v. Midland Enterprises, Inc.*, 704 F.Supp. 106 (M.D.La.1989); *Shawver v. R.H. Macy & Co., Inc.*, 697 F.Supp. 1515 (W.D.Mo.1988); *DePina v. General Dynamics Corp.*, 674 F.Supp. 46 (D.Mass.1987), and Ms. Gaunt has done so. A plan beneficiary's spouse has standing under ERISA, as a potential beneficiary, to bring an action to recover benefits allegedly owed under a plan. *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972 (7th Cir.1989).

## A.

ERISA does not specify the standard of review the federal courts must apply in reviewing the decision of a plan administrator to deny benefits. Accordingly, the courts have fashioned standards drawn from trust law. The two standards applied were articulated in the Supreme Court's recent decision in *Firestone Tire & Rubber*

*Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and have been discussed with favor by the courts of this and other circuits. *Bali v. Blue Cross and Blue Shield Ass'n*, 873 F.2d 1043 (7th Cir. 1989); *Aubrey v. Aetna Life Ins. Co.*, 886 F.2d 119 (6th Cir.1989); *DeNobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir.1989); *Int'l Brotherhood of Electrical Workers, AFL–CIO, Local 47 v. Southern California Edison Co.*, 880 F.2d 104 (9th Cir.1989); *Schultz v. Metropolitan Life Ins. Co.*, 872 F.2d 676 (5th Cir.1989).

*Firestone Tire* instructs us that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. at 956. Applying these principles, the appropriate standard of review to be applied in this case is one which examines the arbitrary and capricious nature of the committee's conduct. The severance benefit plan's language specifically states that each member of the committee administering the plan acts in the capacity of a fiduciary and vests the committee with authority to interpret provisions of the benefit plan in its determination on the question of eligibility for benefits.

Accordingly, since CSX's benefit plan grants the committee great discretion in its administration of such plan, this court must review the committee's decisions under the standard affording it similar discretion. That standard is the arbitrary and capricious standard. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir.1990); *Exbom v. Central States Health and Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir.1990). Ms. Gaunt bears the burden of proof in this matter to demonstrate that the committee acted in an arbitrary and capricious manner in denying her claim for severance benefits. *Allison v. Dugan*, 737 F.Supp. 1043 (N.D.Ind.1990); *Taylor v. Suburban Teamsters of Northern Illinois Fringe Benefits Funds*, 613 F.Supp. 205 (N.D.Ill.1985).

The arbitrary and capricious standard of review is the least demanding form of judicial review of administrative action. *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285–286, 95 S.Ct. 438, 442–443, 42 L.Ed.2d 447 (1974); *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985). As applied from *Firestone Tire*, the arbitrary and capricious standard states that an administrator's decision shall not be overturned on a § 1132(a)(1)(B) matter, absent special circumstances such as fraud or bad faith, if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Exbom v. Central States Health and Welfare Fund*, 900 F.2d at 1142, *citing Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985).

This circuit has further elaborated the arbitrary and capricious standard of review applicable to a plan administrator's determinations. "[A] court will not set aside the denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents." *Shull v. State Machinery Co., Inc. Employees Profit Sharing Plan*, 836 F.2d 306, 308 (7th Cir.1987). Nor will it do so where the trustee has based its decision "on a consideration of the relevant factors that encompass the important aspects of the problem before it." *See Reilly v. Blue Cross & Blue Shield United of Wis.*, 846 F.2d 416, 420 (7th Cir.) (*quoting Motor Vehicle Manufacturers Ass'n of the U.S., Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). If the trustee makes an informed judgment and articulates an explanation that is satisfactory in light of the relevant facts, i.e., one that makes a "rational connection" between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the trustee's decision is final. *See Smart v. State Farm Ins. Co.*, 868 F.2d 929, 936 (7th Cir.1989); *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1049–53 (7th Cir.1987).

Ms. Gaunt argues, however, that the scope of review must yield, to an undefined extent, in the face of the administrators' conflict of interest. The company administered the plan. Ms. Gaunt points to language in *Firestone Tire:* "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" 489 U.S. at 115, 109 S.Ct. at 956. It does not seem a necessary conclusion that such a conflict exists merely because the administrator's decision saves the plan money, *see Fuller v. CBT Corp.*, 905 F.2d 1055, 1058–1059 (7th Cir.1990), or merely because a party in interest's officer or employee serves as a fiduciary, *see* 29 U.S.C. § 1108(c)(3). CSX, however, concedes that the court should consider, in determining whether the committee's decision was unreasonable, that it served as administrator. Even when the conflict is considered, the committee's decision was not unreasonable.

### B.

The committee's actions were reasonable based on the clear language of the benefit plan and a logical application of such plan. The committee set forth the reasons for its decision in its letter of August 21, 1989 to Ms. Gaunt. Its conduct simply does not provide Ms. Gaunt with a viable ERISA claim for severance benefits.

With respect to Mr. Smith's surplus group, the committee could only accept three applications for voluntary severance in June and July of 1988. As the facts illustrate, eight employees senior to Mr. Smith had applied for such benefits at that time. Hence, under the provisions of the plan dictating that the committee consider applications in order of seniority, Mr. Smith's application properly was not accepted prior to those of the other applicants. The committee eventually was able to accept more applications from the surplus group which included Mr. Smith. However, going in order of seniority, the committee did not reach Mr. Smith's application until December, 1988, five months after his death. At that time, Mr. Smith could not voluntarily sever his employment

with CSX and, hence, could not satisfy his part of the contractual agreement which he had signed in July, 1988.

Ms. Gaunt maintains that Mr. Smith's July, 1988 application for severance benefits constituted an acceptance of CSX's offer for voluntary severance. She contends that her husband was required to be in active service only at the time when he filed his application to receive benefits under the plan. This position is inconsistent with the plan's plain language. The plan informed employees that the company might have to limit the number of applications accepted. If fewer than all applications could be accepted, it cannot be described as unreasonable to limit those accepted to those applicants who still worked for the company. Perhaps, since Mr. Smith was not replaced, CSX would have accepted his application but for his untimely death. But the plan's purpose was to reduce the work force, not to pay bonuses to those no longer employed.

The committee consistently declined to accept applications of those employees who were not in active status. CSX declined applications from those who had been dismissed, transferred, or off work for illness. One applicant was disabled by the time his application was considered; his application for the program was declined.

Hence, Mr. Smith's application was treated in the same manner as those of other similarly situated employees with CSX. This approach was consistent with plan provisions restricting the group of surplus employees to those in active status. The only meaningful time to measure such status would be at the time when employment severance was effected and not simply when the application was made. Since both the plan itself and the committee's application of that plan demonstrate the reasonableness of the defendant's conduct with respect to Ms. Gaunt, this court can find no genuine issue of material fact regarding the defendant's conduct.

Courts have found summary judgment inappropriate in ERISA cases challenging an employee benefit plan when there is a genuine issue of material fact concerning qualification for the plan, *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3rd Cir.1989); *Gaynor v. Ephrata Community Hospital*, 690 F.Supp. 373 (E.D.Pa.1988), when conflicting documentation concerning the beneficiary's eligibility exists, *Williams v. Wellman Thermal Systems Corp.*, 684 F.Supp. 584 (S.D.Ind.1988), or when a factual dispute concerning the date of eligibility exists, *Lawrence v. Westerhaus*, 606 F.Supp. 275 (E.D.Mo.1985). The facts in this case, however, suggest no genuine dispute on any of those issues.

Ms. Gaunt's proposed interpretation of the plan finds no basis in either the plain language of that document or in its logical application. The reasonableness of the committee's decision to deny Mr. Smith's application is evident from the undisputed facts. Ms. Gaunt has come forth with no evidence of any applicant who received benefits despite not working when the application was considered. Nothing in the record suggests that the committee's presumed conflict of interest affected its decision in any way; the plan was administered evenly among applicants and beneficiaries.

Ms. Gaunt relies on *Fuller v. CBT Corp.*, 905 F.2d 1055, 1060 (7th Cir.1990), in which summary judgment was reversed for want of evidence to refute the plaintiff's contention that the defendant had extended benefits "for three other employees in circumstances materially indistinguishable from his." CSX has refuted any such claim by Ms. Gaunt. CSX denied benefits to the dismissed, the disabled, and the deceased. The eight employees in Mr. Smith's district who received benefits were not "materially indistinguishable" from Mr. Smith: without payment of the benefits, those employees would remain part of a bloated work force.

Without evidence suggesting that the plan administrator's decision in this case was arbitrary, capricious, discriminatory, or tinged by improper considerations, summary judgment is proper. The plaintiff's failure to come forward with such evidence warrants precisely that outcome.

### III.

This is a sad case. The record admits of no inference other than that had Mr. Smith

lived to see the day that CSX accepted his application, he would have lived up to his bargain and received $75,000.00 in exchange. The record allows an inference that such a day would have come, since the eight more senior applicants received benefits and CSX did not replace Mr. Smith. The record also indicates, however, that it was never anticipated that all applications would be accepted, and that in declining Mr. Smith's application after his death, CSX acted pursuant to construction of the plan that was reasonable, even-handed, and unaffected by the plan's relationship to the company. While the court finds no satisfaction in enhancing the loss to Mr. Smith's widow, neither can the court find any support in the record for an award to her under ERISA.

Accordingly, since there exists no genuine issue of material fact that defendant CSX Transportation, Inc. is entitled to judgment as a matter of law, this court now GRANTS the defendant's motion for summary judgment.

SO ORDERED.