Victor SEFF, Plaintiff,

v.

NATIONAL ORGANIZATION OF IN-
DUSTRIAL TRADE UNIONS INSUR-
ANCE TRUST FUND, Defendant.

No. 91 Civ. 3180 (GLG).

United States District Court,
S.D. New York.

Jan. 20, 1992.

Alan Jay Binger, Brooklyn, N.Y., for plaintiff.

Proskauer Rose Goetz & Mendelsohn, New York City (Steven P. Seltzer, of counsel), for defendant.

## OPINION

GOETTEL, District Judge.

Victor Seff, the plaintiff, commenced this action against the National Organization of Industrial Trade Unions Insurance Trust Fund challenging a denial of health benefits as a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Both plaintiff and defendant currently move for summary judgment.

## I. FACTUAL BACKGROUND

Plaintiff Victor Seff sought to be a participant in the defendant National Organization of Industrial Trade Unions Insurance Trust Fund ("the Fund"), a joint labor-management health and welfare trust fund. The Fund is governed by ERISA and was established by agreement between the National Organization of Industrial Trade Unions ("NOITU") and employers with which the union had collective bargaining agreements.

Pursuant to a Declaration of Trust (the "Trust Agreement") that formally established the Fund, a Board of Trustees composed of four union representatives and four employer representatives administers the Fund which consists of employer contributions and the investment income earned from them. The Fund provides group insurance and health benefits to eligible members of NOITU and their dependents. Article VI § 1 of the Trust Agreement gives the trustees full authority to determine eligibility requirements and set them down in binding rules and regulations. Under article III § 5, the Trust Agreement also empowers the Trustees to enforce against employer participants all rules and regulations "duly formulated and established" by the Trustees. Moreover, under article V § 2, the trustees have the discretion to interpret and apply the provisions of the trust agreement. Any interpretation adopted in good faith is binding upon all parties to the trust agreements.

Members of the Fund who are represented by NOITU solely for purposes of health benefits (and not for wages, hours, etc.) are termed Associate Members. In addition to the Trust Agreement, their participation in the Fund is governed by a separate Associate Membership Agreement. Paragraph 3 of the Associate Membership Agreement binds employers to comply with its terms plus all terms of the Trust Agreement. To be eligible under the Associate Membership Agreement, employers must submit contributions to the Fund on behalf of all of their employees.

In 1989, Glen DeFaber Private Investigators ("DeFaber") joined the Fund as a Associate Member enrolling DeFaber and two other employees (including plaintiff) in the Fund. According to plaintiff, DeFaber relied upon certain representations of a Mr. Sorezza regarding the eligibility of his employees to join the Fund. For purposes of collective bargaining with NOITU, DeFaber designated in the Associate Membership Agreement an employer representative, Consolidated National Services Co., Inc. ("Consolidated") to represent their interests on issues relating to the Fund. The DeFaber group made contributions to the Fund and received health benefits from October 1989 through January 1991.

On January 10, 1991, the Fund received from Consolidated a notice to terminate the participation in the Fund of two of the three DeFaber employees effective February 1, 1991. Some time afterward, plaintiff, who would have been the sole participant from the DeFaber group beginning February 1st, submitted benefits claims for surgery and medical treatment for a shoulder injury. After receiving the notice of termination and discovering that only one DeFaber employee would remain a Fund participant, the Fund contacted both Mr.

DeFaber and plaintiff requesting information necessary to verify the number of people employed by DeFaber and plaintiff's eligibility under the Fund rules.

Pending a determination of plaintiff's eligibility, the Fund refused to pay plaintiff's claims citing a Fund policy that outstanding claims are not paid when a contributing employer is terminated from participation or when an employee's eligibility is under examination. Their obvious concern was that contributions were no longer being made for all of the DeFaber employees, an impermissible situation under Fund rules.

On January 23, 1991, the Fund sent plaintiff a letter informing him that his participation in the Fund was being terminated due to plaintiff's failure to offer evidence of his eligibility. The letter also informed plaintiff of his right to appeal the termination decision to the Board of Trustees. Plaintiff did so at a February 12 Board meeting. Both plaintiff and Mr. De-Faber were present at the meeting and were afforded an opportunity to challenge the Plan Administrator's decision. Defendant notes that no tax or wage information were presented at the meeting, or in response to earlier requests, to verify that all of DeFaber's employees had been enrolled in the Fund.

In a written decision dated February 28, 1991, the Trustees notified plaintiff that the Fund Administrator's decision to terminate was upheld. They concluded that De-Faber had violated the Fund rules by failing to submit contributions on behalf of all employees. Additionally, the Trustees noted in a footnote that plaintiff, as an independent contractor, may have been ineligible originally to be a Fund participant. The Trustees, however, specifically stated that they were not relying upon this reason for the denial of plaintiff's benefits request. Plaintiff concedes that he was an independent contractor for DeFaber.

Plaintiff commenced this action to recover benefits for $7000 in medical expenses from surgery performed in January 1991. In addition, the Fund did not refund the January or February contributions of De-Faber or plaintiff because of its policy of refusing to refund contributions when the total benefits paid to an employer's employees exceeds the total contributions received from that employer. Plaintiff also seeks to recover these unrefunded contributions.

Before the court today are plaintiff's motion and defendant's cross-motion for summary judgment. While his complaint states a cause of action for breach of contract, plaintiff agrees with defendant that ERISA preempts state common law contract claims relating to employee benefits plans. Therefore, plaintiff's basic claim is for alleged violations of ERISA. ERISA permits the bringing of civil actions in federal court "by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Plaintiff argues that the Trustees' termination of his participation in the Fund was arbitrary and capricious. He contends that the Trust Agreement does not define "employee" and no evidence existed that some DeFaber employees were excluded from enrollment in the Fund. According to plaintiff, the trustees arbitrarily terminated plaintiff's enrollment in January even though the two DeFaber employees who discontinued their enrollment did so effective February 1, 1991. Lastly, plaintiff argues that defendant is estopped from terminating his participation due to representations made by Consolidated concerning plaintiff's eligibility.

Defendant argues that the trustees' decision to deny plaintiff's benefits claims was neither arbitrary nor capricious because the trustees are given full discretion to interpret and apply the trust agreements. Further, the Fund's rules and Trustees' construction of them regarding employee eligibility, employer contributions, and termination of participation were clearly rational. Lastly, defendant argues that the Trust cannot be bound by any misrepresentations made by Consolidated since it was neither the Trust's agent nor had authority

**1040**

to waive the eligibility requirements of plan participation.

## II. DISCUSSION

■ Where a benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to interpret the plan's terms, courts should apply an "arbitrary and capricious" standard when reviewing decisions of plan administrators. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *see also Reichelt v. Emhart Corp.*, 921 F.2d 425 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991) (a post-*Firestone* case applying the arbitrary and capricious standard to review of denial of ERISA benefits); *Schwartz v. Newsweek, Inc.*, 827 F.2d 879, 882 (2d Cir. 1987) ("In actions challenging the denial of benefits under an ERISA plan, review is limited to determining whether the administrator's decision was arbitrary and capricious."). The parties agree that the "arbitrary and capricious" standard is the appropriate standard of review.

There is no doubt that the trustees of the Fund possessed full discretion to determine eligibility requirements for benefits and adopt binding rules and regulations for them. Article VI § 1 of the Trust Agreement states that:

The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the Employees and their dependents.

In addition to discretionary power over eligibility, article V § 2 grants the Trustees discretionary authority to interpret, apply, and construe the provisions of the Trust Agreement. Any interpretations and applications adopted in good faith by the Trustees are binding upon employers and employees. Lasky Affidavit, Exhibit A, article V § 2.

■ Since the Trust and Associate agreements vest the trustees with the highest degree of discretion, the court shall view their decisions with a strong measure of deference. Indeed, the arbitrary and capricious standard is the least demanding form of judicial review of administrative action. All questions of judgment are reserved for the agency or, in this case, for the Plan Administrator and trustees. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285-86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). In *Bowman*, the Supreme Court described the contours of the "arbitrary and capricious" standard:

Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." The court is not empowered to substitute its judgment for that of the agency ... The agency must articulate a "rational connection between the facts found and the choice made." ... While we may not supply a reasoned basis for the agency's action that the agency itself has not given ..., we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Id.* at 285-86, 95 S.Ct. at 442 (citations omitted). Absent a showing of bad faith or arbitrariness, the court will not disturb the trustees' interpretations of a plan as long as they are consistent with the plan's terms and purpose.

■ The basic issue is whether the trustees' denial of Mr. Seff's medical benefits was arbitrary or evinced bad faith. Because the court sees no evident conflict of interest for the trustees, and plaintiff has suggested none, their decision is accorded greater judicial deference. The court will not overturn the trustees' decision unless it is strongly convinced that they erred or that their decision was completely unreasonable. *See Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052-53 (7th Cir.1987).

The Associate Membership Agreement which DeFaber signed clearly stated that

contributions must be made on behalf of all employees in order for an employer to qualify for Fund participation. Lasky Affidavit, Exhibit D, ¶ 5. The requirement that an employer make contributions for all of its employees is neither arbitrary nor improperly motivated. It protects the fiscal integrity of the Fund from employers who would save money by selectively enrolling only those employees with greater need for health insurance. Such practices would quickly erode the actuarial integrity of the Fund and might force the Fund into insolvency.

Article II § 3 of the Trust Agreement says that the trustees can establish rules to effectuate the purposes of the Fund, the primary purpose being to provide health insurance and benefits to its participants. The Fund clearly envisions providing such coverage over the long-term and a rule requiring contributions for all employees helps insure the Fund's long-term survival. It is the trustees' duty to avoid substantial adverse actuarial and economic impact on the Fund.

After DeFaber notified the Fund of the discontinuation of two of its three enrolled employees, the Fund requested information in order to assess the plaintiff's continued membership in the Fund. During the review process, the Fund was led to question the eligibility of the DeFaber group as a whole. It is undisputed that the Fund requested tax statements and wage records of DeFaber and none were produced. At oral argument, plaintiff argued that no tax records were produced because the Fund had requested a particular tax form that DeFaber did not use for his employees. DeFaber stated that since the Fund did not specifically request his 1099 tax forms he did not provide them. The Fund, in response, noted that it had requested records documenting DeFaber's employees from both DeFaber and plaintiff on several occasions after DeFaber sent notification of withdrawal from the Fund.

At Board of Trustees meeting DeFaber described his employees as independent contractors (plaintiff admits his status). At oral argument, however, DeFaber maintained that contributions were made for all persons like plaintiff who gathered leads for DeFaber's private investigation business. Due to DeFaber's and plaintiff's inability to show that the DeFaber group had ever met the eligibility requirements, the trustees concluded that selective enrollment had occurred and upheld the Plan Administrator's termination of their participation. Consequently, the Fund refused to process plaintiff's medical claims.

A problematic issue arises when we examine the reasons given by the trustees for their termination decision. The Plan Administrator initially suspended plaintiff's benefits coverage because plaintiff failed to provide evidence of his or the DeFaber group's eligibility for participation in the Fund. However, on appeal, the trustees' affirmance of this decision was somewhat ambiguous. In their February 28, 1991 letter, the trustees upheld the Plan Administrator's denial of plaintiff's claims because the DeFaber group was disqualified for failure to make contributions on behalf of all DeFaber employees, a fact that the trustees stated Mr. DeFaber had admitted at the Board meeting.

It is unclear whether this referred to a failure to contribute for all employees from the beginning of the group's participation or at the point DeFaber notified the Fund that two of its three enrolled employees were discontinuing participation effective February 1, 1991. The minutes of the Board meeting seem to indicate that the trustees were primarily concerned with the DeFaber notification of January 10th and its inference of selective enrollment.

Plaintiff argues that the Board minutes demonstrate that his termination was arbitrary in that the trustees wrongly concluded that contributions had not been made for all DeFaber employees in January 1991. The court notes that it is unclear whether the brief paragraph synopsis in the Board's February 28 letter represents a complete record of the eligibility concerns addressed by the Board at the February 12th meeting. However, this question does not impact on our resolution of this case.

■ Considering the evidence that existed at the Board meeting and the reasons

originally offered by the Plan Administrator, we cannot say that the trustees' affirmance of the denial of benefits rises to the level of arbitrary action or evinces bad faith.[1] The Plan Administrator terminated plaintiff's participation because of plaintiff's failure to produce evidence demonstrating his or the DeFaber group's eligibility. Although the trustees' written decision to uphold the Plan Administrator's denial of benefits was not a model of clarity, the reasoning behind the denial of· plaintiff's claims is abundantly clear and was reasonable given the evidence before the trustees at their February meeting.

It was no doubt clear to plaintiff and DeFaber from repeated Fund requests for employee wages and tax information that the Fund had serious questions concerning the group's eligibility. Yet, neither plaintiff nor DeFaber produced any records until well after the Board rendered its decision. Although it has no bearing on our decision, we note that the 1099 tax form that plaintiff eventually did produce after litigation commenced showed that plaintiff earned a total of $575 in "nonemployee compensation" from DeFaber in 1990. Plaintiff's Exhibit B.

When DeFaber was not fórthcoming with its employment records the Fund reasonably terminated the group's participation. At the hearing before the Board of Trustees, plaintiff and DeFaber had every opportunity to offer evidence establishing their eligibility. They failed to do so and the Board upheld the Plan Administrator's decision to terminate. Other courts have upheld a trustee's denial of benefits when a claimant fails to provide information reasonably requested by the plan administrator. *See, e.g., Bali v. Blue Cross and Blue Shield Ass'n,* 683 F.Supp. 1220 (N.D.Ill.1988), *aff'd,* 873 F.2d 1043 (7th Cir. 1989) (failure to provide medical information).

Only the employer can demonstrate how many employees it has and thus show that contributions were made for all of them. Therefore, the Fund must rely upon employers for this necessary information. In recognition of this reality, the Trust Agreement explicitly requires employers and employees to furnish the trustees with such records and information requested to verify their eligibility. Lasky Affidavit, Exhibit A, art. XIV § 1.

The failure of plaintiff and DeFaber to produce their employee records upon request would itself violate the Trust Agreement that they were bound to comply with under paragraph 3 of the Associate Membership Agreement. Paying out benefits to employers who can not (or will not) demonstrate their eligibility when specifically requested to by the Fund would jeopardize the Fund by enabling ineligible employees to collect benefits so long as they got their claims in before the Fund discovered their ineligibility.[2]

Based on this failure to produce proof of full enrollment, coupled with the suspect timing of the submission of plaintiff's benefits claims and DeFaber's notice of withdrawal and plaintiff's admission of his independent contractor status, the Board concluded that DeFaber had not made contributions for all its employees.[3] The DeFa-

---

**1.** If the termination decision had rested solely upon the fact that the DeFaber group was viewed as ineligible once DeFaber notified the Fund that two employees were discontinuing participation, the trustees' decision might be considered arbitrary since all three enrolled De-Faber employees continued their participation through January 1991. In that situation, it would appear that plaintiff's medical claims submitted in January 1991 would have been covered.

**2.** Of course, if defendant had done a more thorough job of assessing employers seeking to join the Fund this entire case might have been avoided. By simply requiring employers and employ-ees to produce tax or wage records as a condition to acceptance into the Fund, defendant would have likely discovered Mr. Seff's status as an independent contractor for DeFaber.

**3.** We note that courts, in cases after the *Firestone* decision, have held that the factual determinations of plan administrators should for reasons of practical necessity also be reviewed under an "abuse of discretion" standard. *See Pierre v. Conn. Gen. Life Ins. Co.,* 932 F.2d 1552 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). Following this lead, we would view the trustees' factual conclusion that the DeFaber group was ineligi-

ber group's participation was terminated for violation of both the Associate Membership and Trust agreements.

The Board, in its February 28 letter, noted a second, independent reason for declaring plaintiff ineligible for Fund participation, his status as an independent contractor. The Board, however, did not rely upon this rationale for their decision. If they had made this consideration part of their decision the court's task would have been even more straightforward. The Fund's rule excluding independent contractors from eligibility was within the trustees' authority to interpret the Trust Agreement and could not be considered arbitrary. The relationship between employer and independent contractors is less certain and more amorphous than with full-time employees. As a result, the risks of selective enrollment or extended Fund participation by contractors who perform irregular or isolated services are greater.

Like the trustees, we do not rest our conclusions upon this rationale. However, we recognize that the trustees decision was clearly informed by DeFaber's admission that plaintiff was an independent contractor. Where "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. *Exbom v. Central States Health and Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir.1990) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985)); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir.1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990); *Gaunt v. CSX Transp., Inc.*, 759 F.Supp. 1313, 1318 (N.D.Ind.1991). After considering all the evidence before it and providing plaintiff ample opportunity to produce evidence demonstrating his eligibility, the trustees' refusal to process plaintiff's benefits claims was neither arbitrary nor in bad faith as a matter of law.

■ Lastly, we reject plaintiff's contention that the Fund was bound by the representations of Consolidated or Mr. Sorezza. Because the Fund's actuarial soundness is

ble for Fund participation under this more def-

ultimately at stake, absent extraordinary circumstances, courts are reluctant to apply estoppel to require trustees to pay benefits to persons not entitled to them. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1041 (2d Cir. 1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986). At oral argument, plaintiff argued that Consolidated acted more as an insurance broker soliciting businesses to join the Fund. In response, the Fund stressed that it does no business with insurance brokers. Rather, Consolidated was DeFaber's designated collective bargaining representative whose function, besides representing DeFaber in bargaining with NOITU, was to collect employer premiums and turn them over to the Fund.

To resolve this issue, we need only look to the provisions of DeFaber's Associate Membership Agreement. Paragraph 12 explicitly states that "In all matters pertaining to this Agreement, Consolidated shall be acting as the agent of the Employer." Thus, it is DeFaber not the Fund who may be bound by any representations by Consolidated. No statements by a Consolidated representative could estop the Fund from denying plaintiff's participation for DeFaber violations of the Trust and Associate Membership Agreements.

■ Additionally, the decision not to refund plaintiff's contributions after termination must also stand. Once plaintiff was terminated for ineligibility of the DeFaber group, it was reasonable for the Fund to protect its fiscal integrity by offsetting the outstanding January and February contributions by the benefit amounts it had already paid which exceeded the total contributions of the ineligible DeFaber employees.

## III. CONCLUSION

To conclude, since no material factual issues are in dispute and reasonable minds could not differ as to the import of the evidence, summary judgment is appropriate in this case. *See* Fed.R.Civ.P 56(c). The

erential standard.

denial of plaintiff's benefits claims, as a matter of law, was neither arbitrary nor irrational. Thus, the court grants defendant's cross-motion for summary judgment and concurrently denies plaintiff's motion for summary judgment.

SO ORDERED.