COMMUNICATION WORKERS OF AMERICA, AFL–CIO and Susan M. Archuri, Patrick Rawlins, Susan Manchester, Michelene Bernardon, Patricia Shanley, Diane Manfredi, and Sandra Pileckas, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NYNEX CORPORATION, New York Telephone Company, Empire City Subway Company (Limited), the Sickness and Accident Disability Benefit Plan of New York Telephone and Empire City Subway Company (Limited), the NYNEX Sickness and Accident Disability Benefit Plan, the Employees' Benefit Committee of New York

Telephone Company and Empire City Subway Company (Limited), the Employees' Benefit Review Committee of New York Telephone Company and Empire City Subway Company (Limited), Defendants.

No. 93 CV 5329(LLS).

United States District Court, S.D. New York.

June 4, 2002.

Spivak, Lipton, Watanable, Spivak & Moss (James M. Murphy, of counsel), New York City, for Plaintiffs.

Verizon (Lisa M. Birkdale, of counsel), Boston, MA, for Defendants.

## Opinion and Order

STANTON, District Judge.

Both sides move for summary (or partial summary) judgment on the claim for breach of collective bargaining agreements and for payment of benefits under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B). Defendants also move for summary judgment on the remaining counts of the complaint. The complaint charges defendants with breach of collective bargaining agreements ("CBAs") in violation of the Labor–Management Relations Act, 29 U.S.C. § 185, and asserts other claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Plaintiffs claim defendants changed their interpretation and application of employee benefits plans, to plaintiffs' detriment, in May 1990 or June 1992. As a result, plaintiffs contend, their injuries warranting accident disability benefits were initially misclassified, or wrongfully reclassified, to receive less generous sickness disability benefits, because their injuries were not suffered in direct connection with the performance of their duties. This change, they argue, effectively amended

the benefits plans without notice to the Communications Workers of America, in breach of collective bargaining agreements and defendants' fiduciary duties under ERISA.

1.

The collective bargaining agreements between the parties incorporate by reference the Sickness and Accident Disability Benefit Plan (the "Plan").

The language in the Plan defining accident disability benefits has remained unchanged since 1971:

1. *Participation*—All employees shall be participants in the Accident Disability Benefit Plan and qualified to receive payments under the Plan on account of physical disability work by reason of accidental injury (not including the accidental injuries specified in Paragraph 12 of Section 6) arising out of and in the course of employment by the Company or a Former Affiliate or Associated or Allied Company from which the employee was reassigned as of January 1, 1984. . . .

. . . . .

5. *Relationship of Injury to Employment*—Accidental injuries shall be considered as arising out of and in the course of employment only where the injury has resulted solely from accident during and in direct connection with the performance of duties to which the employee is assigned in the service of the Company, or was assigned by the Former Affiliate or Associated or Allied Company from which the employee was reassigned as of January 1, 1984, or which he is directed to perform by proper authority, or in voluntarily protecting the Company's property or interests. . . .

Sickness and Accident Disability Benefit Plan, Sec 5., ¶¶ 1,5. (Waldron Aff., Ex. 1).

The definition of "Sickness Disability Benefits" is given at section 4, paragraph one of the Plan:

For the purposes of the Plan, sickness shall include injury other than accidental injury arising out of and in the course of employment by the Company or by the Former Affiliate or Associated or Allied Company from which an employee was reassigned on January 1, 1984.

The Plan is administered in accordance with a Summary Plan Description ("SPD"), a document required by ERISA and designed to simplify and explain the terms of the plan. *See* 29 U.S.C. § 1022; 29 C.F.R. § 2520.102–2(a). The SPD provides:

SICKNESS DISABILITY BENEFITS

This part of the plan provides benefits when your illness or "off-duty accident" requires more time off than the Incidental Absence policy covers. (An off-duty accident is an accident that occurs when you aren't working.)

. . . . .

ACCIDENT DISABILITY BENEFITS

This part of the program provides benefits if you're unable to work due to an on-duty accident.

SPD for NYNEX Disability Plan (January 1991), pp. 4, 14. (Decl.Maher, Ex. C.)

2.

 Congress intended SPDs to be a primary source of information regarding plan benefits. "[E]mployees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990). *Heidgerd* held that where "terms of a plan and those of a plan summary conflict, it is the plan summary that controls." *Id.* at 908.

In *Pocchia v. Prudential Insurance Company,* the court recognized there was a limit to the rule in *Heidgerd:*

> While the circuits agree that an SPD controls if a conflict exists between the underlying policy and the SPD, ... many of these courts also agree with us that that this rule of construction should not be invoked if no direct conflict exists or if the SPD is silent on an issue that is described in the underlying policy....

*Pocchia,* 74 F.Supp.2d 240, 248 (E.D.N.Y. 1999), quoting *Mers v. Marriott Int'l,* 144 F.3d 1014, 1023 (7th Cir.), *cert. denied,* 525 U.S. 947, 119 S.Ct. 372, 142 L.Ed.2d 307 (1998).

The plaintiffs argue that the SPD is ambiguous because "on-duty" could be read broadly to mean during working hours, or it could have the narrower meaning given to it in the Plan, "during and in direct connection with the performance of duties." The Plan and SPD therefore conflict, they argue, because the SPD makes a broader promise of benefits.

While conceivable in the abstract, that argument fails upon examination of the actual language employed.

The term "an on-duty accident" means something more limited than "while you are on the company's property." According to Webster's Third New International Dictionary (Unabridged) (Merriam–Webster, Inc.1981), "on duty" means "assigned to a task or duty: engaged in or responsible for some specific performance." In the SPD, that distinction is made clear: it defines an off-duty accident as "an accident that occurs when you aren't working." That conforms to the dictionary meaning of off duty: "not assigned to any specific task or duty: free from assignment or responsibility (men *off duty* loafing around the barracks)." *Id.* (emphasis in original).

Thus, there is no conflict between the SPD and the Plan, and no occasion to invoke a rule favoring the SPD language over that of the Plan. That reflects common sense: favoring the SPD would do the plaintiffs no good, for its meaning is not different from the Plan.

3.

Even under plaintiffs' view of the possible scope of the SPD's language, there would be no more than a good faith dispute over the meaning of the words and the employee benefit committees' resolution is clearly not inconsistent with either the language of the SPD or the terms and purpose of the Plan. "Absent a showing of bad faith or arbitrariness, the court will not disturb the trustees' interpretations of a plan as long as they are consistent with the plan's terms and purpose." *Seff v. National Organization of Industrial Trade Unions Insurance Trust,* 781 F.Supp. 1037, 1040 (S.D.N.Y.1992).

The fact that some prior decisions had been made erroneously misclassifying off-duty injuries does not mean the plaintiffs were treated less than fairly.

*Conclusion*

Plaintiffs' motion for partial summary judgment is denied. Defendants' motion for summary judgment is granted. The Amended Complaint is dismissed.

So ordered.