Judith S. DARLING, Plaintiff,

v.

E.I. DuPONT DE NEMOURS & COMPA-
NY, as Plan Administrator Total and
Permanent Disability Income Plan, De-
fendant.

No. 95–CV–6596L.

United States District Court,
W.D. New York.

Jan. 21, 1997.

Lawrence I. Heller, Rochester, NY, for
Judith S. Darling.

Mark J. Moretti, Phillips, Lytle, Hitchcock,
Blaine & Huber, Rochester, NY, for E.I.
DuPont de Nemours & Company.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Judith S. Darling, commenced
this action in New York State Supreme
Court, Monroe County, seeking to recover
disability benefits from her former employer,
defendant E.I. DuPont de Nemours & Co.
("DuPont"). The complaint alleges, *inter
alia,* that DuPont's denial of plaintiff's claim
for benefits constitutes a violation of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* On November 30, 1995, DuPont removed the action to this court pursuant to 28 U.S.C. § 1441, on the ground that the action is founded on a claim arising under the laws of the United States. Both parties have moved for summary judgment.

## FACTUAL BACKGROUND

Darling began working as a clerk for DuPont in 1976. As an employee, she was also a participant in DuPont's Total and Permanent Disability Income Plan ("the Plan"). The Plan makes benefits available to eligible employees "in the event of total and permanent disability resulting from injury or disease ..." Jerry H. Brenner Aff.Ex. A at 1.

Several parts of the Plan are of particular relevance in this case. Section II(E) states that "[a]n individual shall be considered 'totally and permanently disabled' if the Board of Benefits and Pensions ["the Board"] finds that he is totally disabled by injuries or disease and presumably will be totally and permanently prevented from pursuing any gainful occupation ..." The Plan also provides procedures for processing employees' applications for benefits, and states that "[t]he Board of Benefits and Pensions retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan. The decision of the Board in all matters involving the interpretation and application of this Plan shall be final." *Id.* § VIII(B).

Plaintiff alleges that in early 1993, she began experiencing severe fatigue, joint pain, weakness, etc. By August 1993, she was completely unable to work, and the last day she worked for DuPont was August 27, 1993, after which she went on short-term disability leave.

Darling was diagnosed as suffering from Chronic Fatigue Immune Dysfunction Syndrome ("CFIDS"), an ailment still not fully understood, but characterized by the debilitating symptoms complained of by Darling. When her short-term benefits were about to run out, she applied to DuPont for benefits under the Plan. On January 12, 1994, plaintiff was advised that her application had been

denied. She appealed the decision through DuPont's internal appeals procedures, but the denial was finally upheld in 1995.

Plaintiff commenced the instant action on November 27, 1995. The complaint seeks an order compelling DuPont to pay Darling benefits under the Plan from January 1, 1994 to the present and in the future (offset by plaintiff's Social Security benefits), punitive damages, and declaratory relief.

## DISCUSSION

### I. Standard of Review

The first issue that must be addressed is the standard of review to apply in reviewing defendant's decision denying plaintiff's claim for benefits. Although plaintiff's initial memorandum of law did not expressly address this question, it relies entirely on cases involving Social Security benefits. In Social Security cases, however, the courts must decide whether the decision denying benefits is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). That standard is not applicable in the case at bar. Rather, this case is governed by the principles set forth by the Supreme Court in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Bruch,* the Court held that "a denial of benefits challenged under [29 U.S.C. § 1132(a)(1)(B)] is to be reviewed under a de novo standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court is to apply the more deferential arbitrary-and-capricious standard. *Id.* at 115, 109 S.Ct. at 956–57.

It is clear that under the terms of the Plan at issue here, the arbitrary-and-capricious standard applies. The Plan expressly confers upon the Board "discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan."

Nonetheless, there appears to be some confusion, or at least dispute, between the parties generated by the decision of the

Southern District in *Sansevera v. E.I. Du-Pont de Nemours & Co.*, 859 F.Supp. 106 (S.D.N.Y.1994). There, the court, construing the same Plan as the one in the instant case, stated that "[t]he fact that Plan is funded by DuPont raises a potential conflict of interest in the Board's decision to deny Sansevera's application, and therefore will be considered in deciding whether the Board acted arbitrarily or capriciously." *Id.* at 112. In support of this statement, the court cited the Supreme Court's statement in *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956–57, that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion'" (internal citation omitted).

In her reply brief, plaintiff appears to read *Sansevera* as holding that the court should review the Board's decision de novo because the Board is made up of DuPont employees. If that is her contention, it is incorrect. The court in *Sansevera* clearly applied the arbitrary-or-capricious standard; *see* 859 F.Supp. at 112. In addition, to the extent that plaintiff suggests that I should review defendant's decision de novo regardless, I decline to disregard the clear mandate of the Supreme Court in *Bruch*.[1]

Defendant contends that the *Sansevera* court erred in considering any potential conflict of interest created by DuPont's funding of the Board. DuPont asserts that the Second Circuit rejected *Sansevera*'s reading of *Bruch* in *Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.*, 46 F.3d 1264 (2d Cir.1995). There, the court rejected the plaintiff's contention that the court should have afforded a decision by the defendant's Retirement Committee, which administered the plan in question, less deference than usual because the committee was an agent of the defendant, and therefore had an interest in keeping the costs of funding the plan as low as possible, which put the committee in conflict with its fiduciary duty to plan participants. The court stated that "the simple fact

that the administrator of a plan ... happens to be 'an arm of the employer' does not in itself create a conflict of interest." *Id.* at 1274.

I believe, however, that DuPont's characterization of *Jordan* as a "rejection" of *Sansevera* is overstated. For one thing, the circumstances in the two cases were different. In *Jordan*, the court refused to give the administrator's decision less deference simply because the Retirement Committee "happen[ed] to be 'an arm of the employer' ..." The *Sansevera* court, however, said that it would consider the fact that the plan was *funded* by the defendant. That statement is consistent with the approach taken by the Third Circuit in *Kotrosits v. GATX Corp. Non–Contributory Pension Plan for Salaried Employees*, 970 F.2d 1165, 1173 (3d Cir.), *cert. denied*, 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992), which was cited with approval in *Jordan; see* 46 F.3d at 1274. In *Kotrosits*, the court held that the degree of deference afforded to plan administrators would properly be reduced in cases involving "unfunded plans where benefits come directly from the sponsor's assets and funded plans where the sponsor's contributions each year are determined by the cost of satisfying plan liabilities in the immediately preceding year." *Id.* at 1173.

In the case at bar, the Plan provides that "[a]ll costs of providing benefits under this Plan and expenses of administering this Plan ... shall be borne by the Company." Brenner Aff.Ex. A § VIII(C). Thus, decisions on whether to grant benefits under the plan could have a "direct impact on the Plan sponsor," *Kotrosits*, 970 F.2d at 1173. Under these circumstances, "*Bruch* instruct us ... that the existence of such an alleged conflict does not operate to change the standard of review, but rather becomes 'a facto[r] in determining whether there is an abuse of discretion.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995). Accordingly, I will take this factor into account

---

1. I also note that plaintiff's argument in this regard is made no more persuasive by her hyperbolic and inflammatory assertion that "[g]iving this Board 'discretion' is like giving Himmler, Goering and Eichmann with Dr. Mengele as medical consultant, authority to review the medical benefits of the Third Reich at Auschwitz." Plaintiff's Reply Brief at 2.

in deciding whether defendant acted arbitrarily or capriciously.

## II. Defendant's Denial of Plaintiff's Application for Benefits

"The arbitrary and capricious standard of review is highly deferential to a plan administrator. The question before a reviewing court under this standard is 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Jordan*, 46 F.3d at 1271 (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974)) (internal quotes omitted). Under this standard, then, the court "may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan*, 52 F.3d at 442 (quoting *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993)).

Applying this standard to the case at bar, I find that defendant's denial of plaintiff's application for benefits was not arbitrary and capricious. Defendant is therefore entitled to summary judgment.

Both parties have attempted either to discredit, or to support, three aspects of defendant's decision: that plaintiff did not suffer from a "disease"; that she was not "totally" disabled; and that she was not "permanently" disabled. I find, however, that the last of these determinations by defendant—that plaintiff was not permanently disabled—is dispositive.

As stated, the Plan provides that only employees who are "permanently and totally disabled" are eligible for benefits under the Plan. The Plan does not expressly define "permanently disabled," except to say that an employee is considered permanently disabled if the Board finds that she "presumably will be ... permanently prevented from pursuing any gainful occupation ..."

Dr. Benjamin Ramirez, M.D., who during the relevant time period was DuPont's Associate Corporate Medical Director, had the responsibility to make a recommendation to the Board on whether an applicant was eligible for benefits under the Plan. Based on his review of plaintiff's application, including reports and other documents from physicians who had examined Darling, he concluded that she did not meet the criteria for benefits, a conclusion that the Board accepted.

■ One of the bases for Dr. Ramirez's determination was his conclusion that plaintiff had not provided satisfactory medical evidence that she was "permanently" disabled. He states in an affidavit that in considering this aspect of her claim, he "interpreted the Plan provisions to require evidence showing permanence to a reasonable degree of medical certainty." Ramirez Aff. ¶ 20.

Plaintiff contends that this standard is unreasonable in itself. Plaintiff argues that to require proof of permanence to a reasonable degree of medical certainty is inconsistent with the medical profession's aversion to branding any medical condition as "permanent," due to the unpredictability of future advances in medicine, the course the disease may take on its own, etc. Plaintiff also contends that this standard discriminates against persons who suffer from ailments like CFIDS that are not yet well understood, particularly with respect to the prognosis for persons afflicted with the illness.

Although those arguments are not unreasonable, the issue before the court is whether the *Board's* interpretation of the Plan is reasonable. In the absence of some indication that the Plan was intended to mean that permanence need not be shown to a reasonable degree of medical certainty, I am unable to conclude that Dr. Ramirez's and the Board's interpretation of the Plan was unreasonable.

Plaintiff points out that the Plan provides for the cessation of benefits if the recipient "is found to be no longer totally and permanently disabled." Plaintiff's Motion Ex. B § VII. That does not render defendant's interpretation unreasonable, however. First, this statement could be read to apply to persons whose disability, though permanent, ceases to be "total." More importantly, however, even if this provision implicitly recognizes that a disability thought to be permanent may nevertheless eventually cease,

defendant's requirement of proof to a *reasonable degree* of medical certainty also recognizes that rarely if ever can anyone state to an absolute certainty that a medical condition will last a person's lifetime. Defendant's use of the reasonable-degree standard, therefore, distinguishes this case from *Sansevera,* in which the court found unreasonable DuPont's requirement that the applicant demonstrate "with medical certainty" that the disability would be lifelong. 859 F.Supp. at 114–15.

In addition, I note that courts frequently consider whether a physician is able to make a finding to a reasonable degree of medical certainty in similar contexts, which also suggests that there is nothing unreasonable about that standard. *See, e.g., Reid v. Connecticut Gen. Life Ins. Co.,* 17 F.3d 1092, 1100 (8th Cir.1994) (district court, in finding that defendant insurance company had been prejudiced by plaintiff's late filing of claim, and accordingly did not owe plaintiff any benefits, did not err in relying on physician's inability to state to reasonable degree of medical certainty that plaintiff was disabled during certain time period); *Brogan v. Holland,* 908 F.Supp. 363, 371 (S.D.W.Va.1995) (since doctors who examined plaintiff were not able to say with any degree of certainty the specific time or cause of plaintiff's stroke, defendant plan trustees' finding that stroke was not caused by mining accident was not unreasonable); *Bruce v. K–Mart Corp.,* 568 F.Supp. 378, 384 (W.D.Ark.1983) (finding that plaintiff first became disabled on earliest date when "it could be said with a reasonable degree of medical certainty that the disability was likely to be permanent").

■ On the record that was before defendants, I also find that their conclusion that plaintiff had not established the permanence of her condition to a reasonable degree of medical certainty was not arbitrary or capricious. Several of the physicians who had examined Darling expressed uncertainty about how long her condition would last, and some even opined that she might recover relatively soon.

For example, a September 22, 1993 letter from Dr. Jack Chelebian, M.D. to Dr. Carl Auerbach, M.D. (a DuPont physician who had referred Darling to Dr. Chelebian) stated that given the "uncertainty of outcome" of plaintiff's condition, he recommended medication on a trial basis. Plaintiff's Motion Ex. H. An attached note stated that "[h]opefully, she may have a positive response ..." *Id.*

A letter addressed "To Whom It May Concern" from Dr. A.R. Brigandi, M.D., one of plaintiff's treating physicians, though stating that Darling suffered from Chronic Fatigue Syndrome, also stated that "[i]t is not known whether or when the disability is likey [sic] to resolve," and that plaintiff was "totally disabled from working in any capicity [sic] for an indefinite period of time." *Id.*

Dr. Auerbach also examined Darling. Although he stated that the trial drugs recommended by Dr. Chelebian had not been successful and that he "d[id] not see any likelihood of a return to work," he also stated that her prognosis was "[u]ncertain," and that "the course of the problem is such that remissions can occur." *Id.* Ex. I. Dr. Auerbach also stated that "[i]f indeed it is what has become to be known [sic] as the 'chronic fatigue syndrome', the prognosis is fair. Individuals with this syndrome often recover in six to eight months but some can linger on for many years and there are relapses. We just do not have enough medical information about it to make any better prognosis at this time." Brenner Aff.Ex. B.

Dr. Edward E. Walsh, M.D., a consulting physician, also examined plaintiff after she was referred to him by Dr. Brigandi. He stated that "her symptoms f[e]ll into this category of chronic fatigue syndrome," but that he tried to reassure Darling that the symptoms "will wax and wane, that they may disappear completely but there is no guarantee of this." Plaintiff's Motion Ex. M. He also said that he explained to plaintiff "that it may well resolve on its own without specific therapy as is often the case." *Id.*

In light of these statements, I cannot say that "there has been a clear error of judgment" on defendant's part, *Jordan,* 46 F.3d at 1271, or that their decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52

F.3d at 442. This is not to say, of course, that defendant's determination was the only reasonable one, but it is not the role of this court to substitute its judgment for defendant's.[2]

The court is not insensitive to plaintiff's condition. The medical records clearly indicate that she has suffered considerably since her symptoms first arose. I am also aware that persons who are afflicted with diseases that are not yet well understood may be at a disadvantage when attempting to establish the permanence of their condition. Nevertheless, I cannot decide this case based on whether I think that plaintiff "deserves" benefits. Plaintiff is seeking to enforce her rights under a specific, written plan, the Board's interpretation of which I must accept unless it is arbitrary and capricious. Given the uncertainty of the medical record regarding plaintiff's prognosis, I cannot find that the Board's conclusion that plaintiff had failed to show that she suffered from a permanent disability was arbitrary and capricious.

### CONCLUSION

Plaintiff's motion for summary judgment (Item 7) is denied. Defendant's cross-motion for summary judgment (Item 8) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

---

2. As stated, I have considered the fact that defendant funds the Plan, and the possible conflict of interest that might result. However, I find nothing in the record to suggest that this played any part in defendant's decision. *See Pagan,* 52 F.3d at 443.