**Barbara E. MARTIN, Plaintiff,**

v.

**E.I. DUPONT DE NEMOURS & COMPANY, Defendant.**

**No. 96-CV-0373A.**

United States District Court, W.D. New York.

March 26, 1998.

Dennis A. Clary, Toohey & Dowd, P.C., Lewiston, NY, for Plaintiff.

Paul B. Zuydhoek, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for Defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on July 23, 1996. On June 6, 1997, defendant filed a motion for summary judgment. On January 30, 1998, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendant's motion for summary judgment be granted and the case dismissed.

Plaintiff filed objections to the Report and Recommendation on February 12, 1998, and defendant filed a response thereto on March 3, 1998. Oral argument on the objections was held on March 20, 1998.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Rec-

ommendation, defendant's motion for summary judgment is granted and the case is dismissed.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on July 23, 1996 for report and recommendation on any dispositive motions. The matter is presently before the court on Defendant's motion for summary judgment, dated June 6, 1997.

### *BACKGROUND*

This action, alleging causes of action under the Employees' Retirement Income and Security Act (ERISA), 29 U.S.C. § 1132 *et seq.*, was filed by Plaintiff on June 6, 1996. Specifically, Plaintiff, Barbara E. Martin, alleges that Defendant, E.I. DuPont de Nemours and Company ("DuPont"), wrongfully denied her benefits under its total and permanent disability plan. DuPont filed its answer on July 17, 1996.

On June 6, 1997, DuPont filed a motion for summary judgment on the ground that it was entitled to judgment as a matter of law based on the medical records presented. DuPont also filed a supporting memorandum of law. On July 8, 1997, Martin filed a memorandum of law in opposition to DuPont's motion.[1] Thereafter, on July 21, 1997, DuPont filed a reply memorandum of law. Oral argument was not deemed necessary.

For the reasons as set forth below, DuPont's motion for summary judgment should be GRANTED.

### *FACTS*

Plaintiff, Barbara Martin, became employed by Defendant DuPont in May, 1977. Martin, an electronics operator whose job required heavy lifting, last worked for Du-

---

1. At the conclusion of the reply brief, Plaintiff asserts that summary judgment should be denied to Defendant, and that summary judgment should be granted to Plaintiff with an order directing Defendant to pay disability benefits. Plaintiff, however, aside from this conclusory statement, did not file a cross-motion for summary judgment, and therefore, the court will not entertain such a motion at this time.

Pont on November 8, 1989, and was unable to work thereafter because of a diagnosed torn rotator cuff in her left shoulder, chronic impingement syndrome and rotator cuff tendinitis. At that time, she qualified for short-term disability benefits. At the end of the short-term disability period, Martin did not return to work, and she was terminated from her employment with DuPont on March 27, 1990.

According to her medical records, Martin developed pain in her left shoulder in October, 1988 when she lifted an armor mill at work which weighed between 85 and 90 pounds. (Document Response 2, Exhibit 5). Martin went to the Mount St. Mary's Hospital of Niagara Falls emergency room on October 23, 1988 complaining of chest pain, and believing that she might have a cardiac condition. She was admitted to the hospital at that time with a preliminary diagnosis of anterior chest syndrome, acute myositis, and exogenous [2] obesity.[3] A chest X-ray did not reveal any abnormalities of the heart (Document Response 1, Exhibit 21), and a gallbladder series also had negative results (Document Response 1, Exhibit 22). Martin was also given an echocardiogram which did not show any cardiac disease (Document Response 1, Exhibit 23). Acute pericarditis and angina were also ruled out. (Document Response 1, Exhibits 25, 27). Upon discharge, her treating physician, Dr. Thomas E. Comerford, diagnosed her with myositis (skeletal muscle injury) of the anterior chest, and prescribed Motrin 100 mg. for anti-inflammatory action and pain relief. (Document Response 1, Exhibit 23). Martin was placed on short-term disability at that time from her work at DuPont (Document Response 1, Exhibit 20). Dr. Comerford permitted her to return to work on December 19, 1988. (Document Response 1, Exhibit 20).

Martin continued to complain of chest pain, and visited Dr. Comerford. The dosage of Motrin was increased to 400 mg. and she was placed on a restricted work schedule with no lifting. (Document Response 1, Exhibit 2).

Martin saw Dr. James B. McDaniel Jr., her gynecologist, on July 29, 1989, for an unrelated problem, and on August 5, 1989, Dr. McDaniel issued a letter stating that Martin had recovered from that problem and could resume her usual occupation as of August 7, 1989. (Document Response 1, Exhibit 9).

On September 20, 1989, Martin went to the emergency room at Niagara Falls Memorial Medical Center complaining of acute chest pain and was admitted to the hospital. (Document Response 1, Exhibit 2). The tests taken in the emergency room had normal results, with acute pericarditis ruled out, and an initial diagnosis made of anterior myositis of the anterior chest tissue and massive exogenous obesity. (Document Response 1, Exhibit 3). Martin was seen by a cardiologist at the hospital, Dr. M.A. Iacona, on September 21, 1989, who found no cardiac disease. (Document Response 1, Exhibit 5). On October 6, 1989, Dr. Comerford placed Martin on short-term disability, stating that Martin had a good prognosis, and that she should work a modified work schedule for at least four weeks. (Document Response 1, Exhibit 20). On October 24, 1989, Dr. Comerford recommended that Martin return to work, but that she be placed on permanent restrictions on lifting due to her acute and chronic anterior chest myositis. (Document Response 1, Exhibit 19). Martin returned to work, but did not work after November 8, 1989, complaining of chest pains. Martin thereafter returned to short-term disability status, with Dr. Comerford stating that she should not return to work until she was evaluated by Dr. James Conley at the Buffalo General Hospital. (Document Response 1, Exhibit 19).

Martin was referred to the cardiac care unit at the Buffalo General Hospital, where she underwent an angiogram on November 28, 1989. The test proved negative, and Dr. James Conley, the attending physician, stated that "it was felt that her chest pains were not cardiac in nature." (Document Response 1, Exhibit 14).

---

**2.** Exogenous is defined as caused by an outside factor, such as food, as opposed to a structural or functional failure.

**3.** According to her medical report dated September 20, 1989, Martin's height is over six feet and she weighed 285 lbs. Document Response 1, Exhibit 2.

On February 26, 1990, Martin was seen by Dr. Ignatius S. Bertola of the Western New York Orthopedic Group. In a letter written to Dr. O.K. Sarac, Medical Director at the DuPont Niagara Falls Plant, dated February 28, 1990, Dr. Bertola indicated that heart problems had been ruled out, and that it was believed that the pains were musculoskeletal in nature. (Document Response 1, Exhibit 18). Dr. Bertola noted that Martin guarded the motion of her shoulders during examination, not allowing him to rotate the shoulders, and further stated that he had difficulty seeing any muscle problem with her anterior chest wall because of her weight. Dr. Bertola, informed that Martin's job involved heavy lifting of mills weighing approximately 85–90 pounds, and that the pains were exacerbated by the lifting, could not find any causally related disability and recommended that Martin return to work without limitation. (Document Response 1, Exhibit 18).

Martin was referred to the Cleveland Clinic Foundation in Cleveland, Ohio where she was seen on March 13, 1990. (Document Response 1, Exhibit 11; Document Response 2, Exhibit 1). Dr. John J. Brems and Dr. Stephen P. Hayden at the Cleveland Clinic diagnosed her with chronic impingement syndrome and chronic rotator cuff tendinitis, and recommended that she have a significant limitation of her overhead lifting at work of no more than five to ten pounds until the symptoms quieted down. (Document Response 2, Exhibits 1, 3). Martin was also recommended to physical therapy. Martin did not return to work following this assessment, and she was terminated from her employment on March 27, 1990.

On April 10, 1990, Martin was seen by Dr. John C. Newman of Niagara Orthopaedic Associates based on the diagnosis from the Cleveland Clinic. (Document Response 2, Exhibit 4). Dr. Newman recommended an arthrogram of the left shoulder and a decompression of the shoulder to relieve the soreness and friction overlying the rotator cuff. (Document Response 2, Exhibit 4).

On June 5, 1990, Martin was examined by Dr. Eugene J. Hanavan, an orthopedic surgeon, at the behest of Kemper Insurance Group, the workers compensation carrier.

In Dr. Hanavan's opinion, Martin suffered from a bursitis condition of the left shoulder causally related to the lifting incident in October, 1988 at DuPont, and suggested that she receive cortisone injections in the shoulder with home therapy. (Document Response 2, Exhibit 5). Dr. Hanavan indicated at that time that Martin was totally disabled. Dr. Hanavan further stated that if these measures did not work, Martin should consider shoulder decompression surgery. (Document Response 2, Exhibit 5).

On September 17, 1990, Dr. Comerford, in a statement sent to DuPont, stated that Martin could not return to her position at DuPont. (Document Response 2, Exhibit 6).

On January 11, 1991, Dr. Comerford cleared Martin for surgery, noting that Martin was suffering from pain and distress in the torn left shoulder rotary cuff and that she had many episodes of anterior chest discomfort which were not cardiac in nature, but rather due to spasm of the coronary arteries. (Document Response 1, Exhibit 13). On May 20, 1991, Martin underwent surgery at Mount St. Mary's Hospital by Dr. John C. Newman for decompression arthroplasty of the left shoulder, release of coracoacromial ligament, and arthrotomy of the shoulder with biceps tenodesis. (Document Response 1, Exhibit 12).

On May 7, 1991, Martin was awarded disability benefits from the Social Security Administration. (Document Response 2, Exhibit 9). The administrative law judge found that the diagnosis of a torn rotator cuff in her left shoulder, chronic impingement syndrome and rotator cuff tendinitis was not contradicted by substantial evidence, and that Martin's impairments, which had left Martin unable to lift and carry more than five to ten pounds without experiencing pain, unable to push or pull heavy weights and left her subject to pain in her left shoulder and chest upon any exertion, restricted her to performing substantially less than the full range of sedentary work. (Document Response 2, Exhibit 9). As such, Martin was given full disability benefits.

On October 28, 1994, Martin filed for total and permanent disability benefits under Du-

Pont's total and permanent disability income plan (the "Plan"). On June 8, 1995, Martin's application for benefits was denied by the Board of Benefits and Pensions on the ground that, at the time of Martin's termination on March 27, 1990, Martin was not totally and permanently disabled as defined in Section II E of the Plan. Martin appealed the Board's · determination, furnishing the Board with other medical records, including the records from the Cleveland Clinic, letters written to Dr. Comerford from Dr. Hayden and Dr. Newman, the letter from Dr. Hanavan to the Kemper Insurance Group, and the favorable determination from the Social Security Administration. Nonetheless, on January 5, 1996, the Board denied Martin's appeal. Martin was also informed that her appeal rights under ERISA were completed. This lawsuit followed.

### DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain summary judgment. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In. assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* at 255; *Rattner, supra,* at 209.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48. *See also Lipton v. The Nature Company,* 71 F.3d 464, 469 (2d Cir.1995). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific evidence to establish that there is a genuine issue of material fact for trial. *Celotex, supra,* at 322–23. "Mere conclusory allegations or denials" in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Lipton, supra,* at 469.

DuPont has filed a motion for summary judgment on the ground that it is entitled to judgment as a matter of law as the Board's action in determining that Martin was not totally disabled under the terms of DuPont's Plan was not arbitrary and capricious. Martin, while agreeing that the standard of review in a denial of benefits such as the benefits at issue here is whether the Board's actions were arbitrary and capricious, asserts that DuPont is not entitled to summary judgment as the Board's determination was not supported by substantial evidence and was erroneous as a matter of law.

The standard of review in this case is governed by the principles set forth by the Supreme Court in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone,* the Court held that "a denial of benefits challenged under [ERISA, 29 U.S.C. § 1132(a)(1)(B) ] is to be reviewed under a de novo standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court must apply the more deferential arbitrary and capricious standard. *Firestone, supra,* at 115. In this case, DuPont's Plan clearly grants the Board discretion to make findings and to determine eligibility under the Plan as follows:

> An individual shall be considered "totally and permanently disabled" if the Board of Benefits and Pensions finds that he is totally disabled by injuries or disease and presumably will be totally and permanently prevented from pursuing *any* gainful employment.

DuPont Total and Permanent Disability Plan, Article II, Section E (emphasis added). As such, the court will review the Board's finding based on whether the Board's determination to deny Martin disability benefits under the Plan was arbitrary and capricious.

■ The arbitrary and capricious standard of review is highly deferential to a plan administrator. The question before a reviewing court under this standard is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,* 46 F.3d 1264, 1271 (2d Cir. 1995). "The court may not upset a reasonable interpretation by the administrator." *Id.* Under this standard, a court "may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (quoting *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993)).

In order to receive disability benefits under DuPont's Plan, the Board of Benefits and Pensions must determine that the individual:

> is totally disabled by injuries or disease and presumably will be totally and permanently prevented from pursuing any gainful occupation ... [t]he determination of whether an employee is totally and permanently disabled shall be made on the basis of his condition immediately prior to his termination of service with the Company, and an employee who becomes totally and permanently disabled after termination of service with the Company will not qualify for benefits under this Plan.

DuPont's Disability Plan, Article II, Section E.

■ Martin first argues that DuPont's Plan is arbitrary and capricious on its face. Citing the case of *Sansevera v. E.I. DuPont de Nemours and Company,* 859 F.Supp. 106 (S.D.N.Y.1994), which held that DuPont's requirement that a person applying for disability benefits under the Plan must demonstrate with a medical certainty that he will permanently suffer from his disabling condition is unreasonable on its face and in the context of the entire Plan, *Sansevera, supra,* at 115, Martin contends DuPont's definition of a total and permanent disability is arbitrary and capricious and should not be followed. DuPont asserts that, in relying on *Sansevera,* Martin is overlooking the fact that the disease involved in that case was chronic fatigue syndrome, and the court found the Plan to be arbitrary as there was, at that time, no method of determining whether a person would ever recover from chronic fatigue syndrome, hence a person suffering from that disease would never fulfill the requirements for disability under the Plan. In a later case involving chronic fatigue syndrome, *Darling v. E.I. DuPont de Nemours and Company,* 952 F.Supp. 162 (W.D.N.Y.1997), in distinguishing *Sansevera,* the court noted that, in *Sansevera,* DuPont had required a finding that the plaintiff would, with medical certainty, permanently suffer from chronic fatigue syndrome, while in *Darling,* DuPont had required proof to a *reasonable degree* that the plaintiff would permanently suffer from the effects of the disease. *Darling, supra,* at 165–66. As such, the *Darling* court found that the reasonable degree standard was not unreasonable, and that, therefore, the Plan

was not arbitrary and capricious on its face. *Darling, supra,* at 166.

Similarly, in this case, according to Steve Harrison, the Director of Compensation and Benefits for DuPont and, during the relevant time period in this case, Chairman of the Board of Benefits and Pensions, the language of the Plan has been consistently interpreted by the Board to mean that "unless it can be demonstrated that an applicant [for benefits] was totally incapable of pursuing gainful employment and that the disability was expected to a reasonable degree of medical certainty to be lifelong, the application would be denied." Affidavit of Steve Harrison, dated June 4, 1997, at ¶ 2. Dr. Benjamin Ramirez, DuPont's Associate Corporate Medical Director, reviewed Martin's medical records, ultimately determining, in his opinion, that the medical evidence in the record did not allow him to reach a "reasonable conclusion" that Martin was totally and permanently incapable of performing gainful employment as of the date of termination. Affidavit of Dr. Benjamin Ramirez, dated June 4, 1997, at ¶ 16. Thus, Martin's case was analyzed using the standard of reasonable degree of medical certainty, and, as such, the court cannot find that DuPont's Plan is arbitrary and capricious on its face. Further, Martin's more basic contention that the Plan's requirement of permanency and total disability is arbitrary must also be rejected as, under ERISA, employers are not required to provide a specific benefit based on any standard compelled by ERISA. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (ERISA does not mandate that employers provide any particular benefits).

Martin also contends that DuPont acted arbitrarily and capriciously in determining that she was not totally and permanently disabled. Martin argues that Dr. Ramirez primarily relied on the report of Dr. Bertola who examined Martin once, on February 28, 1990, and then directed a letter to Dr. Sarac, DuPont's Niagara Falls plant medical director which disregarded Martin's subjective complaints. Given that one month later, Martin was diagnosed with chronic rotator cuff tendinitis and chronic

impingement syndrome, Martin avers that Dr. Bertola's diagnosis was erroneous and that his letter should have been disregarded in favor of the medical records from her treating physician, Dr. Comerford. Martin also states that DuPont's reliance on a letter sent to DuPont from Martin's gynecologist in August, 1989, clearing Martin for work, was arbitrary as Martin's disability was not based on the gynecological problem for which she was being treated at that time and had since recovered. Martin contends that DuPont's dismissal of the consultative report of Dr. Hanavan was arbitrary as DuPont took the fact that Dr. Hanavan stated that Martin should be re-evaluated in four to six weeks as evidence that she was not permanently disabled, as opposed to a statement that if her condition did not improve during that period more aggressive treatment should be considered. Finally, Martin argues that DuPont's conclusion that there were no medical reports indicating total and permanent disability disregards the medical reports submitted by Martin's treating physician, Dr. Comerford, who expressly stated that Martin was totally disabled as of November 8, 1989.

In initially denying Martin's claim, Dr. Ramirez found that Martin was not permanently disabled as required by the Plan. On appeal, the Board of Benefits and Pensions found that Martin was not totally incapable of pursuing gainful employment during her lifetime, and affirmed the denial of Martins' benefits. Dr. Ramirez's opinion, accepted by the Board, was that Martin had not provided satisfactory medical evidence to show, with a reasonable degree of medical certainty, that she was permanently disabled within the meaning of the Plan.

According to Dr. Ramirez, he reviewed medical reports and opinions generated as of the date of Martin's termination, March 27, 1990, considering the objective medical evidence of permanent impairment of function as related to her complaints, her functional capacity as of March 27, 1990, and the prognosis or the permanency of her condition. Affidavit of Dr. Benjamin Ramirez, at ¶ 8. Dr. Ramirez specifically noted Dr. McDaniel's, (Martin's gynecologist) letter of August

5, 1989 where Martin was told that she could resume her usual occupation as of August 7, 1989 with no restrictions, and Dr. Bertola's letter of February 28, 1990 where Dr. Bertola reported that Martin should be able to perform her usual duties without limitations or restrictions. Ramirez Affidavit, at ¶¶ 9, 11. Dr. Ramirez also observed that Martin's chest pains proved not to be cardiac in nature, and that all cardiac tests proved normal. Ramirez Affidavit, at ¶ 10. Finally, Dr. Ramirez made mention of the report of Dr. Hanavan, noting that Dr. Hanavan had not considered Martin's injuries to be permanent in nature, rather that she only required a re-evaluation in four to six weeks. Ramirez Affidavit, at ¶ 13. In his affidavit, Ramirez did not specifically reference the other medical records as having relied on them in particular.

On appeal, Martin submitted additional medical records, including the favorable determination of the Social Security Administration on Martin's request for disability benefits to the Board of Benefits and Pensions. Steve Harrison, Chairman of the Board of Benefits and Pensions during the relevant period, stated that Martin's medical records were considered and Dr. Ramirez, the Board's medical advisor, was consulted. According to Mr. Harrison, insufficient medical evidence existed on which the Board could support a finding that Martin was disabled within the standards set by the Plan. Affidavit of Steve Harrison, at ¶ 2. According to Jerry H. Bremer, corporate counsel for Du-Pont and also a member of the Board, "after asking some questions of Dr. Ramirez and discussing the merits of the case, [the Board] agreed that there was insufficient evidence to conclude that Ms. Martin would presumably be permanently prevented from pursuing any gainful occupation." Affidavit of Jerry H. Bremer, at ¶ 9. Mr. Bremer also stated that the Board did not merely "rubber stamp" the recommendations of Dr. Ramirez, rather the Board as a rule make their "own independent judgments based on the evidence presented as [the Board] understands it." Bremer Affidavit, at ¶ 11. According to the letters of denial received by Martin, all of her medical records were considered, including her favorable determination from the Social Security Administration, however, in responding to Martin's action seeking disability benefits, Dr. Ramirez highlighted the medical opinions of Dr. McDaniel, Dr. Bertola, and Dr. Hanavan in his affidavit.

■ The court first notes that, while a favorable determination from the Social Security Administration may be considered, such a finding of disability is not binding on plan administrators, a point that Martin concedes. *McCray v. E.I. DuPont de Nemours and Company*, 960 F.Supp. 38, 42 n. 2 (W.D.N.Y.1997). An examination of Martin's medical records reveals the following opinions regarding Martin's ability to work and the permanence of her disability: (1) Dr. McDaniels' letter of August 5, 1989 as regarding an unrelated gynecological problem and clearing Martin to work as a result of this problem having been solved as of August 7, 1989 (Document Response 1, Exhibit 9); (2) Dr. Comerford's letter of October 24, 1989 to Dr. Sarac, the DuPont Medical Director, recommending that Martin be placed on permanent restrictions on lifting due to her acute and chronic anterior chest myositis (Document Response 1, Exhibit 19); (3) Dr. Comerford's note of November 8, 1989 stating that Martin should not work pending a cardiac examination on November 21, 1989 (Document Response 1, Exhibit 19); (5) Martin's physician statements on her short-term disability plan applications submitted by Dr. Comerford restricting her from work from October 23, 1988 through December 21, 1988, and then again restricting her from work from September 20, 1989 through October 6, 1989, this letter stating that Martin had a good prognosis, and that she should be on modified work for at least four weeks from October 6, 1989 (Document Response 1, Exhibit 20); (6) Dr. Bertola's letter of February 28, 1990 stating that, upon examination, although Martin guarded the motions of her shoulders not allowing Dr. Bertola to rotate them to any degree, Martin did not suffer from a disability caused by heavy lifting at DuPont and a recommendation that Martin return to work with no restrictions (Document Response 1, Exhibit 18); (7) Examination by Dr. John J. Brems of the Cleveland Clinic Foundation dated March 14, 1990 stat-

ing that Martin should have a significant limitation of her overhead lifting, no more than five to ten pounds until her symptoms quieted down (Document Response 2, Exhibit 1); (8) Letter from Dr. Stephen P. Hayden of the Cleveland Clinic Foundation to Dr. Comerford, dated April 7, 1990 where Dr. Brems recommendations were reiterated (Document Response 2, Exhibit 3); (9) Dr. Hanavan's Letter of June 6, 1990 to Martin's workers compensation carrier stating that Martin was "totally disabled" because of her shoulder condition, and recommending cortisone injections, further stating that if such conservative measures did not work, Martin should consider shoulder decompression surgery (Document Response 2, Exhibit 5); (10) Letter from Dr. Newman to Dr. Comerford, dated June 4, 1990, indicating that cortisone injections had been unsuccessful, and that Martin should undergo shoulder surgery (Document Response 2, Exhibit 4); (11) Dr. Comerford's statement of disability, dated September 17, 1990, indicating that Martin could no longer work because of her shoulder disability (Document Response 2, Exhibit 6); and, (12) Martin's favorable Social Security Administration determination on her request for disability benefits (Document Response 2, Exhibit 9).

In its reply brief, DuPont argues that the totality and permanence of Martin's disability must be considered based on her condition immediately preceding her termination of service with DuPont. *See* DuPont Plan, Article II, Section E ("the determination of whether an employee is totally and permanently disabled shall be made on the basis of his condition immediately prior to his termination of service with the Company.") As such, DuPont states that Dr. Comerford's letter of September 17, 1990 stating that Martin could no longer work has limited value, as does the surgical report of Dr. Newman written in May, 1991. As to the other medical reports and recommendations, DuPont contends that, at most, these opinions concern restrictions on heavy lifting, and do not satisfy Martin's burden to show that she cannot hold any gainful occupation. Finally, DuPont asserts that the Social Security Administration determination was made on a different ground than that envisioned by the

DuPont Plan in that the Social Security finding was based on the inability to engage in any substantial gainful activity which can be expected to continue for a period of not less than twelve months, as opposed to a permanent disability. DuPont also notes that the Administrative Law Judge, in his opinion, noted that Martin "ha[d] the residual functional capacity to perform the physical exertion requirements of work, except for an inability to lift or carry more than 5 or 10 lbs." Document Response 2, Exhibit 9, p. 3.

In reviewing the Board's denial of disability benefits, "absent a showing of bad faith or arbitrariness, the court will not disturb [its] interpretations of [the] plan as long as they are consistent with the plan's terms and purpose." *Glavan v. Building Service 32B–J Health Fund,* 1997 WL 381789 (S.D.N.Y.1997) (quoting *Seff v. NOITU Ins. Trust Fund,* 781 F.Supp. 1037, 1040 (S.D.N.Y.1992)). The court's review of the medical records, along with the affidavits submitted in this case, leads the court to the conclusion that the Board's decision was not "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan, supra,* at 442. While there is significant evidence relating to Martin's inability to perform her job as an electronics operator at DuPont, the medical records do not address whether Martin could ever work at any job, the standard required under the DuPont Plan. Dr. Comerford, Martin's treating physician, stated that Martin could not work approximately six months after her termination from DuPont. However, the other medical opinions, even discounting Dr. Bertola's opinion which, to the court, appears to go against the weight of all of the other medical opinions in the record, state, at most, that Martin cannot work at a job that requires any lifting or exertion. The court finds no medical evidence in the record regarding what type of employment, if any, that Martin could perform following recovery from her shoulder surgery. The medical records submitted to the Board do not set forth any evidence that, following surgery, it was determined by her doctors that she could never go back to any type of work. Even accepting Dr. Comerford's post-termination opinion

that Martin was disabled and could not return to work at DuPont, the court finds that such opinion was given in response to inquiries from an insurance carrier for a benefits plan held by DuPont, *see* Document Response 2, Exhibit 6), directed to the question of whether Martin could ever return to her work at DuPont, not whether Martin was totally and permanently disabled as defined by the Plan.

As stated in *Darling,* the court, while not insensitive to Martin's condition, cannot decide the case based on whether or not the court believes that Martin "deserves" benefits. *Darling, supra,* at 167. Given the lack of medical information regarding Martin's prognosis both before and after surgery, the court cannot find, on the record presented, that the Board's conclusion that Martin failed to show that she suffered from a total and permanent disability as defined by the Plan was arbitrary and capricious.

### CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment should be GRANTED, and the complaint should be dismissed.

January 30, 1998.